UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

RONALD Q. TERRY,

        Petitioner,

        v.                                          Case No. 10-C-0789

UNITED STATES OF AMERICA,

        Respondent.

---

DECISION AND ORDER DENYING MOTION UNDER 28 U.S.C. § 2255 (DOC. 1)
AND DISMISSING CASE

Ronald Q. Terry, Jr. has filed a motion under 28 U.S.C. § 2255 to vacate his sentence claiming ineffective assistance of counsel. For the reasons set forth below the court will deny the motion and dismiss the case.

To establish ineffective assistance of counsel, Terry must show that his counsel's representation was deficient, i.e., fell below an objective standard of reasonableness, and that he was prejudiced as a result. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The performance standard permits a wide latitude of attorney conduct, and a prisoner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation omitted); *see also Washington v. Smith*, 219 F.3d 620, 627 (7th Cir. 2000). Judicial scrutiny is "highly deferential" and the court strongly presumes that counsel's conduct was reasonable. *Strickland*, 466 U.S. at 689. Counsel's performance must be evaluated from his or her perspective at the time; hindsight should not distort the evaluation. *Id.*

Once the prisoner establishes his counsel's ineffectiveness, he must demonstrate prejudice. "The defendant must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *Strickland*, 466 U.S. at 697. If the court determines that Terry fails to satisfy either component of the *Strickland* test, it need not address the other. *Chichakly v. United States*, 926 F.2d 624, 630 (7th Cir. 1991).

First, Terry submits that his counsel, Donald J. Chewning, was ineffective by failing to question Detective Daniel Thompson regarding intercepted call data during a December 20, 2006, hearing about the detective's report dated April 11, 2006, and Thompson's assertions that another agent provided information concerning Terry's telephone number prior to April 11, 2006. At the December 6 hearing, the government asked Thompson to explain how he discovered the new telephone number of Mark Cubie, Terry's co-defendant. Doc. 326 at 9-10.[1] In response, Thompson stated, ". . . upon looking at the other pens of Ronald Terry [and] Orlandes Nicksion . . . ." Chewning notified the court that he was not aware of any authorized pen registers on Terry's phone prior to May of 2005.[2] Doc. 326 at 25-26. As a result, the court ordered the government to disclose the orders used to obtain information from Terry's phone prior to April 12, 2005. Doc. 326 at 36. The

---

[1] The government's direct examination of Thompson revealed that authorities monitored the telephone communications of Mark Cubie, using "pen registers" and "trap and trace devices." Doc. 326 at 5. According to Thompson's testimony, in early April 2005, investigators noted a significant change in the calling patterns on Cubie's telephone, deducing that Cubie stopped using a phone number ending in 1716. Doc. 326 at 8. Evidence indicated that he started using a phone number ending in 5638. Doc. 326 at 8.

[2] On cross-examination when Chewning asked Thompson whether it was his belief that at the time in question he had an order authorizing him to monitor Terry's telephone data, Thompson responded, "Yes." Doc. 326 at 23.

2

government did not provide such proof,[3] and moved to reopen and offered an affidavit from Thompson confessing errors of fact. *United States v. Terry*, 572 F.3d 430, 433 (7th Cir. 2009).

The court held a second hearing on December 20, 2006. On direct examination, the government questioned Thompson about the inconsistencies between his testimony at the December 6 hearing and other evidence:

> Government: So it is fair to say you were mistaken when you testified that you had reviewed toll information from Mr. Terry's phone in early April?
>
> Thompson: I was mistaken.
>
> Government: 'Cause no such information exists that you know of?
>
> Thompson: That's correct.

Doc. 330 at 8. Therefore, prior to Chewning's cross-examination of Thompson, which is at issue in the present case, Thompson had admitted that he provided inaccurate information at the previous hearing. Although Chewning did not question Thompson about the inconsistences between his testimony at the December 6 hearing and the detective's April 11 report, he employed a reasonable trial strategy in the cross-examination of Thompson. Chewning identified a discrepancy that was not addressed by the government on direct examination instead of focusing on the previously resolved issue. Doc. 330 at 8. Hence, this court finds that Chewning represented Terry diligently. Moreover, Terry has not presented evidence to substantiate his claims that Chewning's representation was deficient. Therefore, the court finds that Terry has failed to satisfy the first element of the *Strickland* test, and that it need not address the other element of this claim, prejudice.

---

[3]After the hearing, Thompson learned that orders authorizing the collection of such data from Terry's two telephones were not issued until May 3, 2005. *Terry*, 572 F.3d 433.

Second, Terry charges that Chewning failed to sustain his objection to the second degree murder enhancement that the court applied at his sentencing hearing. The United States Probation Office issued a pre-sentence report (PSR) on February 13, 2008, recommending that this court apply USSG §§ 2D1.1(d) and 2A1.2, because a victim was killed under circumstances that would constitute Second Degree Murder. In an addendum to the PSR, Chewning objected, stating that " . . . the facts surrounding the shooting of Earl Benion described a voluntary manslaughter, not a murder . . . ." PSR, Addendum at 2. However, during Terry's sentencing hearing Chewning stated, " . . .I have consulted with Mr. Terry and he is withdrawing that objection. . . ." Doc. 570 at 20.

After Chewning waived the objection, the court provided Terry with the opportunity to comment:

> THE COURT: Have you, Mr. Terry, shared with your attorney all questions or concerns you may have regarding sentencing in your case?
>
> TERRY: Yes, I have.
>
> THE COURT: Are there any matters concerning sentencing that your attorney has refused to address with you?
>
> TERRY: No.
>
> THE COURT: Are there any issues regarding sentencing that you wish to add to the list that you may have given to your attorney previously?
>
> TERRY: No.
>
> THE COURT: Are you satisfied with the arguments that he's presented?
>
> TERRY: Yes.

Doc. 570 at 32-33. As indicated by the record, at the sentencing hearing Terry waived his earlier objection to the PSR and there is no indication that the waiver was not made

4

knowingly and voluntarily. Therefore, Terry fails to establish that Chewning's counsel fell below an objective standard of reasonableness.

Lastly, Terry asserts that Chewning was ineffective because he failed to object to offense conduct that resulted in attribution to him of at least 50 but less than 150 kilograms of cocaine. He submits that he was not a leader of the conspiracy at issue and that the court should have attributed to him a lesser amount of cocaine. Terry further argues that Chewning was ineffective because the court determined that he was at offense level 38, which is the base offense level for second degree murder in the 2007 version of the sentencing guidelines. Terry contends that the appropriate base offense level for second degree murder, as provided in the 2001 version of the sentencing guidelines, is 33.

Unfortunately for Terry, his arguments are based upon a misinterpretation of the USSG § 2D1.1 cross reference of the 2001 sentencing guidelines. Terry shot and killed Earl Benion on or about September 19, 2002. The sentencing guidelines applicable for that period became effective on November 1, 2001. The drug conspiracy in which Terry was charged concluded in May 2005. Thus, the applicable sentencing guidelines for that period became effective on November 1, 2004. The cross reference listed under USSG § 2D1.1(d)(1) of the both versions of the sentencing guidelines states:

> If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the Unites States, apply §2A1.1 (First Degree Murder).

USSG § 2D1.1(d)(1). Pursuant to the 2001 and 2004 sentencing guidelines, the base offense level under USSG §2A1.1 is 43, not 33 as alleged by Terry.[4] Therefore, had Terry

---

[4]Terry may have erroneously assumed that the cross reference in the 2001 sentencing guidelines directed the court to apply the base offense level for second degree murder, which was 33. However, the guidelines in 2001 provide that if a defendant murdered a victim, apply §2A1.1, which is first degree murder -

5

been sentenced under the previous versions of the guidelines, his base offense level would have been 43.

Terry benefitted from being sentenced under the 2007 guidelines. He was sentenced in September 2008 and guidelines relevant for that period became effective on November 1, 2007. The cross reference listed under USSG § 2D1.1(d)(1) of the 2007 guidelines states:

> If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the Unites States, apply §2A1.1 (First Degree Murder) or §2A1.2 (Second Degree Murder), as appropriate, if the resulting offense level is greater than that determined under this guideline.

USSG § 2D1.1(d)(1). Pursuant to the 2007 sentencing guidelines, the base offense level for USSG §2A1.2 is 38. The court did not err in applying level 38, rather than 43, because the 2007 guidelines provided for the more lenient sentence.

Moreover, under the 2001, 2004 and 2007 versions of the guidelines, the base offense level for at least 50 but less than 150 kilograms of cocaine is 36. Thus, if the court attributed to Terry a lesser amount of cocaine, the relevant base offense level for that crime alone would have been less than 36. Notably, however, the cross reference instructs the court to apply the offense level provided in §2A1.2 when such level is greater than the level provided in § 2D1.1. Because the base offense level for second degree murder is greater than the base offense level of at least 50 but less than 150 kilograms of cocaine, or any lesser amount, the amount of cocaine attributed is irrelevant. Therefore, the court finds

---

not second degree murder.

6

that Chewning's counsel was not ineffective because Terry was not prejudiced by the amount of cocaine attributed to him in his sentencing. For these reasons,

IT IS ORDERED that Terry's § 2255 motion is denied and this case is dismissed.

Dated at Milwaukee, Wisconsin, this 7th day of May, 2012.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE
